UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
BENJAMIN BUTLER, on behalf of himself and
all other persons similarly situated,

                Plaintiff,

        v.

JOHN FLUEVOG SHOES, LTD

              Defendant.
-----------------------------------------------------------------

Docket No.

**CLASS ACTION
COMPLAINT &
DEMAND FOR
JURY TRIAL**

Plaintiff, BENJAMIN BUTLER, ("Plaintiff" or "Mr. Butler") on behalf of himself and all other persons similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, Robert Schonfeld, Esq. (of counsel to JOSEPH & NORINSBERG, LLC) as and for their putative class action complaint upon Defendant, JOHN FLUEVOG SHOES, LTD ( "FLUEVOG SHOES" or "Defendant"), hereby alleges as follows:

## **INTRODUCTION**

1.      On September 25, 2018, the U.S. Department of Justice reaffirmed its longstanding position that websites operated by places of public accommodation must be accessible to individuals with disabilities. In a letter to Representative Ted Budd, Assistant Attorney General Stephen E. Boyd stated: "The Department first articulated its interpretation that the ADA applies to public accommodations' websites over 20 years ago." This interpretation aligns with Title III's mandate that the goods, services, and privileges offered by such entities are equally accessible to all, including those with disabilities. (See DOJ Letter to Congress, last accessed July 19, 2024.)

2.      Plaintiff, BENJAMIN BUTLER is a legally blind resident of New York County,

1

residing at Selis Manor—an assisted living facility for visually impaired individuals in Manhattan. He has been diagnosed with Diabetic Retinopathy, a progressive retinal disease caused by long-term diabetes-related vascular damage. His condition and legal blindness status are documented by Dr. Eleonora Orloff, OD, of Bronx Eye Associates (See Exhibit A.)

3.      Mr. Butler is a proficient user of NonVisual Desktop Access (NVDA) screen reader software, which he relies on daily to navigate digital environments independently. His fluency with keyboard commands and screen-reading protocols enables him to engage with complex content—including in relevant part, pharmaceutical assistance portals, patient education pages, and insurance navigation tools—without assistance. NVDA's compatibility with its preferred assistive technologies is indispensable to its autonomy and digital accessibility.

4.      This action arises from Defendant **John Fluevog Shoes, Ltd.'s** failure to design, maintain, and operate its website, www.fluevog.com, in a manner accessible to blind and visually impaired individuals. The website functions as an interactive retail platform and a digital gateway to physical services such as in-store pickup, warranty fulfillment, and customer support. Defendant's failure to ensure equal access to these integrated services violates Plaintiff's rights under Title III of the Americans with Disabilities Act ("ADA").

5.      On October 30 and November 5, 2025, Mr. Butler visited www.fluevog.com using NVDA with the intent to shop for footwear for both his wife and himself. As a legally blind consumer, he depends on accessible online shopping to avoid the logistical and emotional burdens of in-person retail environments, which often require him to seek assistance from strangers—an experience he finds uncomfortable, intrusive, and difficult to navigate independently. During these visits, Mr. Butler attempted to review and purchase two specific products: the **Caravaggio –**

2

**Green/Floral Double T-Strap Heels with Bows** for his wife and the **Bennett men's shoe** for himself. Because the website lacked proper alternative text, contained unlabeled interactive elements, and failed to provide screen-reader-compatible navigation, Mr. Butler was unable to meaningfully access the product information, select available options, or add the items to his cart, preventing him from completing the intended purchases.

6.     These barriers included missing alternative text, unlabeled buttons, broken ARIA references, and inaccessible form fields—each of which rendered key content unreadable to screen-reader software. Two separate WAVE audits conducted by Plaintiff's counsel revealed a combined total of **29 accessibility errors** across the pages Mr. Butler attempted to use. These violations contravene the Web Content Accessibility Guidelines ("WCAG") 2.1 Level A and AA standards, which are widely recognized as the benchmark for digital accessibility under the ADA.

7.     Defendant **John Fluevog Shoes Ltd.** is a Delaware corporation with its principal place of business in Broomfield, Colorado. It owns and operates www.fluevog.com, a nationwide e-commerce platform offering footwear, accessories, and customer service tools to consumers across the United States, including New York. The website routinely directs users to physical retail locations and authorized service centers, establishing a clear nexus between its digital interface and brick-and-mortar operations.

8.     Mr. Butler specifically sought out Fluevog Shoes due to its reputation for comfort, customization, and inclusive branding. As a blind consumer, he depends on accessible digital interfaces to make informed purchasing decisions. Defendant's failure to provide a WCAG-compliant website denied him equal access to the same services offered to sighted users. Despite its global reach and substantial revenue, Defendant has failed to implement basic

3

accessibility features, reflecting a pattern of disregard for the rights of disabled individuals.

9.      Plaintiff seeks injunctive relief requiring Defendant to revise its digital policies and practices to ensure that its website is—and remains—fully accessible to blind and visually impaired users. Mr. Butler remains committed to maintaining a technology regimen that supports his independence and productivity. Without remediation of the barriers described herein, he will continue to be excluded from accessing Defendant's goods and services on equal terms.

10.      Defendant's ongoing failure to provide accessible digital services constitutes a denial of full and equal access under Title III of the ADA. Plaintiff respectfully requests that this Court issue a permanent injunction compelling Defendant to bring its websites into compliance with federal accessibility standards.

## JURISDICTION AND VENUE

11.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, et seq.

12.      Supplemental jurisdiction over Plaintiff's state and local claims is proper under 28 U.S.C. § 1367. These claims arise under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"); and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

13.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c). Defendant JOHN FLUEVOG SHOES, LTD conducts substantial and continuous

business in this District through its interactive website, www.fluevog.com. Plaintiff accessed and attempted to use this website from his residence in New York County, and the discriminatory conduct giving rise to this action occurred within the jurisdiction of this Court.

14.     Defendant is registered to do business in Delaware and actively engages in commercial transactions with New York residents through its website. These transactions include product selection, customization, checkout, and customer support. Defendant's digital infrastructure knowingly transmits data and files into New York, establishing purposeful availment under federal precedent. See *Reed v. 1-800-Flowers.com, Inc.*, 327     F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.,* 585 U.S. ___ (2018); *Godfried v. Ford Motor Co.,* 2021 U.S. Dist. LEXIS 87012 (D. Me. May 6, 2021); *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); Sanchez v. NutCo, Inc., 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022); *Panarra v. HTC Corp.*, No. 6:20-cv-6991 (W.D.N.Y. Apr. 15, 2022).

15.     Accordingly, jurisdiction and venue are properly established in this District. Courts have consistently held that accessibility barriers encountered by users within the forum state provide a sufficient basis for asserting personal jurisdiction over out-of-state website operators.

## NATURE OF ACTION

16.     This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered

multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

17.   The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike.

18.   In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

19.   Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

20.   Plaintiff, BENJAMIN BUTLER is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software such as NVDA for Windows.

21.     For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software "translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text… The screen reading software uses auditory—rather than visual—cues to relay this same information… Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

> See also American Federation for the Blind, *Screen Readers*, AFB Technology Guide (last accessed June 12, 2025), estimating that 26 million American adults report sight deficiency.

22.     The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

23.     Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements

7

b. Unlabeled frames and navigation regions

c. Scripts without accessible alternatives

d. Inaccessible forms and input fields

e. Content conveyed solely through visual presentation

f. Inability to resize text without loss of functionality

g. Time limits that cannot be adjusted or disabled

h. Missing or ambiguous page titles

i. Links lacking descriptive context

j. Keyboard focus indicators that are not discernible

k. Undetectable default language settings

l. Components that trigger unexpected context changes

m. Settings that alter context without user notice

n. Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts

o. Improperly nested markup, duplicate attributes, and non-unique IDs

p. Inaccessible Portable Document Format (PDF) files

q. User interface elements whose roles and states cannot be programmatically determined items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

## **STATEMENT OF FACTS**

24.    Plaintiff **Benjamin Butler** is a legally blind consumer residing in New York County, New York. He relies exclusively on NonVisual Desktop Access ("NVDA") screen-reader

software to navigate digital content and complete online transactions independently. Mr. Butler receives ongoing ophthalmologic care and participates in daily instruction at VISIONS at Selis Manor, a residential facility for blind and visually impaired individuals in Manhattan, where he receives assistive-technology training, orientation and mobility instruction, and adaptive-skills support.

25.     On October 30 and November 5, 2025, Mr. Butler visited www.fluevog.com using NVDA with the intent to purchase footwear for his wife and himself. He specifically sought to buy the **Caravaggio – Green/Floral Double T-Strap Heels with Bows** for his wife and the **Bennett men's shoe** for himself. As a blind consumer, Mr. Butler relies on accessible online shopping to avoid the logistical and emotional strain of in-person retail, which often requires asking strangers for assistance—an experience he finds uncomfortable, intrusive, and incompatible with his desire for independence.

26.     While attempting to navigate the Caravaggio and Bennett product pages, Mr. Butler encountered multiple accessibility barriers that prevented him from reviewing product information, selecting sizes, or adding items to his cart. These barriers included missing alternative text, unlabeled buttons, inaccessible size-selection menus, and ARIA implementation failures. The SortSite Accessibility Validation Report confirms these issues are systemic, noting: **"Pages with level A issues are unusable for some people"** and identifying **"14827 pages with accessibility problems."** The report further documents that **"An element with aria-hidden=true contains focusable content… The user can tab to these or focus via touch and hears only silence."** This behavior mirrors Mr. Butler's experience when NVDA moved focus to silent, unlabeled controls on the product pages.

27.     The SortSite report also identifies widespread failures in alternative text, including instances where **"alt text should not be an image file name"** and where placeholder text such as 'picture' or 'spacer' is used instead of meaningful descriptions. These errors directly impacted Mr. Butler's ability to understand product images, as NVDA announced only file names or placeholders rather than descriptions of the Caravaggio or Bennett shoes.

28.     In an effort to obtain assistance, Mr. Butler attempted to access the website's customer-service and accessibility resources. However, the SortSite Broken Link Report shows that these pages themselves were inaccessible. For example, the report repeatedly flags: **"Broken link:** https://www.fluevog.com/customer-service/product-care/ **(fluevog.com in Bing) 503 Server Unavailable"** and **"Broken link:** https://www.fluevog.com/accessibility-statement/." **(fluevog.com in Bing)** The report further notes that the accessibility-statement page contains non-functional links, including **"Broken link: https://www.facebook.com/fluevog 400 Bad Request."** As a result, Mr. Butler was unable to locate any functional accessibility statement, alternative formats, or a means of requesting accommodations.

29.     The SortSite Site Quality Report confirms the breadth of these failures, stating that **"66% [of pages] have accessibility issues, worse than average," "62% have errors,"** and **"67% have W3C standards issues."** It further notes that **13887 pages [contain] broken links or other errors."** These findings demonstrate that the barriers Mr. Butler encountered were not isolated or temporary but part of a pervasive, site-wide pattern of non-compliance.

30.     Defendant **John Fluevog Shoes Ltd.** has been sued previously for website accessibility violations. In *Jahoda v. John Fluevog Shoes, Ltd.*, Case No. 2:2024-cv-01459 (W.D. Pa.), the plaintiff alleged that www.fluevog.com was inaccessible to blind users and failed to

comply with WCAG standards. That case resulted in a settlement agreement requiring remediation of the website. Despite this prior litigation and explicit notice of accessibility obligations, Defendant has failed to implement lasting improvements. The recurrence of identical barriers—confirmed by the SortSite reports and experienced firsthand by Mr. Butler—demonstrates that Defendant had actual notice of accessibility deficiencies yet failed to remediate its digital platform.

31.    Mr. Butler remains highly motivated to return to www.fluevog.com once it is made accessible. His interest is concrete, particularized, and ongoing: he still intends to purchase the Caravaggio heels for his wife and the Bennett men's shoe for himself. These products are not reliably available to him through third-party platforms or offline channels, and he requires full access to Defendant's product pages, cart, account, and customer-service features to complete the intended transactions.

32.    Mr. Butler has suffered a past injury—his inability to complete intended purchases of specific products due to documented accessibility barriers—and faces a real and immediate threat of future harm, given his stated intent to return once the website is accessible and the continuing presence of site-wide accessibility and quality issues. His injuries are directly traceable to Defendant's failure to maintain an accessible website and are redressable through injunctive relief. Accordingly, Mr. Butler has standing to bring this action under Title III of the ADA.

## CLASS ACTION ALLEGATIONS

33.    Plaintiff Benjamin Butler brings this action on behalf of himself and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): All legally blind individuals in the United States who have attempted to access

11

www.jovani.com and were denied equal access to its digital content, product information, and retailer-locator services due to persistent accessibility barriers during the relevant statutory period.

34.    Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): All legally blind individuals residing in the City and State of New York who have attempted to access www.fluevog.com and were similarly denied equal access to its offerings due to the same systemic accessibility barriers.

35.    Common questions of law and fact exist among the Class, including: · Whether www.jovani.com qualifies as a "public accommodation" or a service of a place of public accommodation under Title III of the ADA;

· Whether the Website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to Supergroup's products, services, and support;

· Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace.

36.    Plaintiff's claims are typical of the Class. Like other blind individuals, she relies on screen-reading software and keyboard navigation to access online platforms. She encountered the same systemic barriers—unlabeled buttons, inaccessible forms, mouse-dependent controls, and unreadable product specifications—that affect all Class members.

37.    Plaintiff will fairly and adequately represent the interests of the Class. She has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief

12

applicable to all members.

38.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because

Defendant has acted or failed to act on grounds generally applicable to the Class, warranting

injunctive relief to remediate the website's accessibility barriers.

39.    Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because

common questions of law and fact predominate over individual issues, and a class action is the

most efficient and fair method for adjudicating these claims.

40.    Maintaining this action as a class proceeding will promote judicial economy by

avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds,

if not thousands, of blind individuals who have attempted to use Defendant's Website and faced

exclusion due to its inaccessibility.

### FIRST CAUSE OF ACTION
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

41.    Plaintiff, BENJAMIN BUTLER, on behalf of himself and the Class Members, repeats

and  realleges every allegation of the preceding paragraphs as if fully set forth herein.

42.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

No individual shall be discriminated against on the basis of disability in the full and
equal enjoyment of the goods, services, facilities, privileges, advantages, or
accommodations of any place of public accommodation by any person who owns,
leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

43.    Defendant's  Website, www.fluevog.com that is offered as a link to the company

is a service that is offered to the general public, and as such, must be equally accessible to all

potential consumers.

44.      Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

45.      Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

46.      The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

47.      Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and

incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief**

below.


## SECOND CAUSE OF ACTION
### (Violation of the New York State Human Rights Law)

48.     Plaintiff BENJAMIN BUTLER, on behalf of himself and the Class and New York

City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as

if fully set forth herein.

49.     At all times relevant to this action, the New York State Human Rights Law

("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the

Defendants.  Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a

substantial impairment to a major life activity and is an individual with a disability under Article

15 of N.Y. Executive Law § 292(21).

50.     Defendants, at all relevant times to this action, own and operate a place of

public accommodation, the subject Website,  www.fluevog.com  the meaning of Article 15 of

N.Y. Executive Law § 292(9).  Defendant is a "person" within the meaning of Article 15 of

N.Y. Executive Law § 292(1).

51.     Plaintiff has visited the Website on a number of occasions and has encountered

barriers to his access that exist.

52.     Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful

discriminatory practice for any person, being the owner, lessee, proprietor, manager,

superintendent, agent or employee of any place of public accommodation ... because of the ...

disability of any person, directly or indirectly, to refuse, withhold from or deny to such person

15

any of the accommodations, advantages, facilities or privileges thereof."

53.     Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

54.     Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

55.     The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

56.     Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1").  WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

57.     Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

58.     Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

59.     Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

### THIRD  CAUSE OF ACTION
**(Violation of New York State Civil Rights Law) ("NYCRL")**

60.     Plaintiff, BENJAMIN BUTLER, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

61.     Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

62.    Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

63.    No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

64.    § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

65.    Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

66.    Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

67.    Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

18

68.    Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id...*

69.    Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

### FOURTH CAUSE OF ACTION
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

70.    Plaintiff, BENJAMIN BUTLER, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

71.    N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

72.    Defendant is subject to NYCHRL because it owns and operates the Website www.fluevog.com  making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

73.     Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

74.     Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

75.     Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

            a.      constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

            b.      constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

            c.      failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

76.     Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

77.     As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the

20

full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

78.    Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

79.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

80.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

81.    Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

### FIFTH CAUSE OF ACTION
**(Declaratory Relief)**

82.    Plaintiff, BENJAMIN BUTLER, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

83.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws

21

including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq*., prohibiting discrimination against the blind.

84.     A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a.     A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.,, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794; N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b.     A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.     A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.,; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794; N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d.     An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e.     Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f.     Pre-judgment and post-judgment interest;

g.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.      Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact

the Complaint raises.

Dated: New York, New York
        February 18, 2026

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com